IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2007 AUG -6  P 3: 27

| | | |
|---|---|---|
| LINDA THORNTON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: |
| | * | |
| FLAVOR HOUSE PRODUCTS, INC., and | * | 1:07cv712-WKW |
| FRANKLIN D. WILLIAMS, JR., | * | |
| | * | |
| Defendants. | * | JURY DEMAND |

## COMPLAINT

### I. INTRODUCTION

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," 42 U.S.C. § 2000(e) et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (hereinafter "Title VII"), which provides for relief against discrimination in employment on the basis of sex and unlawful retaliation in relation thereto. The Plaintiff seeks compensatory and punitive damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

### II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4); 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 2000e-5(f)(3).

3. The unlawful employment practices alleged hereinbelow were committed by the Defendant within Houston County, Alabama. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(g).

4. The Plaintiff requests a jury trial on all issues pursuant to 42 U.S.C § 1981a.

## III. PARTIES

5. Plaintiff, Linda Thornton, is a female citizen of the United States, and a resident of the State of Alabama. Ms. Thornton was a former employee of the Defendant, Flavor House Products, Inc.

6. Defendant, Flavor House Products, Inc., (hereinafter "Flavor House") is an employer within the meaning of 42 U.S.C. § 2000e(a) and (b). At all times relevant to this action, Flavor House has employed at least fifteen (15) or more employees.

7. Defendant, Franklin D. Williams, Jr., (hereinafter "Williams") at all times material to this action, was employed by Flavor House, and was Plaintiff's Team Leader and direct supervisor from 2006 until her employment with Flavor House ended in June 2006.

## IV. ADMINISTRATIVE EXHAUSTION

8. The Plaintiff has satisfied all conditions precedent required pursuant to Title VII.

9. On or about September 18, 2006, Plaintiff timely filed a charge of employment discrimination with the Equal Employment Opportunities Commission, the "EEOC", (Charge # 420-2006-05107), in which she complained that the Defendants subjected her to sexual discrimination, sexual harassment, and retaliation in relation to the terms, conditions and benefits of her employment.

10. Plaintiff subsequently received an authorization to file a private action and is timely filing this complaint within ninety (90) days of receiving this authorization.

2

### V. STATEMENT OF FACTS AND CLAIMS

11. Plaintiff re-alleges and incorporates by reference paragraphs 1-10 above with the same force and effect as if fully set out in specific detail hereinbelow.

12. The Plaintiff, Linda Thornton, began working for Flavor House Products, Inc., on or about June 25, 2001.

13. While employed at Flavor House, the plaintiff suffered sexual discrimination, harassment and retaliation. The sexual discrimination started during the plaintiff's first year of employment with Flavor House and continued throughout her employment until she was forced to resign her position with the defendant on or about June 21, 2006, following her complaints to management of sexual discrimination and harassment.

14. During the plaintiff's first year of employment, she repeatedly tried to get a promotion to "Label Operator," but was passed over several times and the position was given to temporary male employees with less experience than the plaintiff or with no experience.

15. Also, unlike the male employees, the plaintiff was required to provide a resume listing her mechanical experience before she was given the position.

16. The discrimination continued even after the plaintiff finally received the position in that she did not receive the training that the male operators/employees received.

17. Additionally, the mechanics, all male, and other male employees made derogatory comments about the plaintiff working "in a man's job."

18. The mechanics did not like for the plaintiff to make adjustments to her machine and

if she took longer than 5 minutes to make adjustments, they would physically push her out of the way and make the adjustments or they would call the male supervisor over to make the adjustments. However, the male operators made adjustments that took longer than five minutes and they were not treated this way.

19. The plaintiff suffered this discriminatory treatment from the time she was put in the Label Operator position until she was forced to resign her employment.

20. The plaintiff's supervisor was aware of the discriminatory treatment; however, he did nothing to stop the discrimination.

21. The plaintiff also made numerous complaints to Marianne Boyer, Director of Operations, about the sexually discriminatory work environment that the female employees, including herself, were forced to work in on a daily basis. The plaintiff told Boyer that the mechanics, who are all male, cursed at and yelled at the female employees and that they called the female employees derogatory names. The plaintiff reported to Boyer that the male mechanics would not allow the female operators to make minor repairs on their machines, but did not say anything when male employees made the same or similar repairs.

22. Boyer's typical response to the plaintiff's complaints of sex discrimination and harassment was to tell the plaintiff that she would have to "deal with it" as she had learned to "deal with it" and to give the plaintiff examples of discrimination that she [Boyer] had do "deal with" in the company.

23. The plaintiff first worked with Frank Williams (male) in 2003 as Williams was

4

supposed to help the plaintiff learn how to run his machine. The plaintiff worked with Williams for three to four weeks and during that time he treated her in a sexually derogatory manner including yelling at the plaintiff, cursing at her, and calling her a "fucking stupid bitch."

24. The plaintiff complained about this sexually derogatory treatment to Melvin Hutchins, a member of management, but Hutchins told the plaintiff that Williams was the only one that knew how to run the machine so she would just have to get along with him.

25. The plaintiff did not work with Williams again until the beginning of 2006 after she had applied for and received a position as Line 3 Label Operator. Shortly after the plaintiff applied for this position, Williams was moved to the department as the Team Leader.

26. From the time Williams became the plaintiff's Team Leader in 2006 until the end her employment, Williams treated the plaintiff in a discriminatory and demeaning manner including, but not limited to, the following: yelling at her; cursing at her every day; constantly talking to the plaintiff about his sex life with his wife; talking to the plaintiff about how often he had sex, how they had sex, where they had sex, and how often they had sex; and stating that he could tell his wife was cheating on him because of the way she "felt" when they had sex. Williams was also very vocal about the fact that he was a registered sex offender.

27. The plaintiff complained about Williams and his discriminatory treatment and harassment of her many times. She complained to Hutchins and Chris Jordan, Supervisor. They told the plaintiff it would be taken care of, but to her knowledge, nothing was ever done as Williams' sexually derogatory and harassing behavior continued.

28. A few months before the plaintiff was forced to leave her employment, she was written up or telling another employee that Williams was a registered sex offender even though Williams made this statement himself almost every day.

29. At first the plaintiff was called in and told not to discuss Williams' history although he discussed it everyday. The plaintiff was told that the matter would be dropped, but if she discussed his criminal history again, she would be written up.

30. A few days later, another female employee told the plaintiff that Williams was making threats to physically hurt the plaintiff. The plaintiff reported these threats to management and was then written up for allegedly discussing Williams' criminal history.

31. The female employee that told the plaintiff about the William's threats was fired shortly afterwards.

32. On or about June 14, 2006, the plaintiff was operating the label machine on Line Three, in her usual position.

33. Williams took over the plaintiff's machine during her break and when she came back, the plaintiff noticed an overflow of re-work that needed to be done and a box full of bad labels that had to be re-done.

34. As the company was having an important audit done that day, the plaintiff asked

Williams to help her with the re-work when he walked by. Williams turned around and shouted at the plaintiff that he had "better mother-fucking things to do than fucking re-work." Williams continued to yell and curse at the plaintiff and kept repeating, "God damn mother fucker" at her.

35. Williams walked to the outside of the line and continued to yell at the plaintiff. While still yelling "God damn mother-fucker" at the plaintiff, he began picking up pallets and slamming them down. He also picked up a large bag of trash and threw it.

36. By this time, a line mechanic had walked up and the plaintiff asked him several times to call a supervisor on the radio. He tried to call a couple of supervisors and was told "it will be one minute."

37. Donald Coty, the Mechanic Supervisor, walked by and the plaintiff asked him to call Melvin Hutchins. By the time Hutchins arrived, Williams had quit yelling and cursing at the plaintiff, but was still throwing pallets around and glaring at her. The plaintiff informed Hutchins that this was the last time Williams was going to lose his temper and "go off" on her by cursing and yelling at her and calling her a "God damn mother-fucker" for no apparent reason.

38. Hutchins then called Chris Jordan, Packaging Supervisor, and he came over to the plaintiff's line. Jordan inventoried the plaintiff's tool bag and then told her to come to his office that afternoon and write out a statement of what happened.

39. The plaintiff told Jordan him about William's discriminatory and harassing treatment of her and that she was tired of having to deal with Williams. Hutchins and Jordan then left to go back to the audit.

40. At three o'clock, the plaintiff went to Jordan's office and wrote out a statement.

From the Hutchins and Jordan left until three o'clock when the plaintiff went to the front office, Williams stood at her re-work table and glared at her, making the plaintiff extremely uncomfortable.

41. On or about June 15, 2006, the plaintiff returned to work and tried to do her job while avoiding Williams. Williams returned to her re-work table and glared at the plaintiff the same way he had the day before. He would also walk up close to the plaintiff's machine and stop and stare at her. When Williams was not standing at the plaintiff's re-work table or next to her machine, he would go to the filler machine and talk to Stephanie and then turn around and glare at the plaintiff from time to time during his conversation.

42. Williams' demeanor was very intimidating and because the plaintiff knew that he had a history of violence against women, she was afraid he was going to hurt her. The plaintiff was so scared of Williams that she took a screwdriver out of her tool bag and began carrying it around in her back pocket.

43. Melvin Hutchins walked by and the plaintiff told him that she was not comfortable working with Williams and that she did not feel safe around Williams. Hutchins told the plaintiff that he had read her statement and agreed that he would not feel safe either then he reassured me that the situation would be resolved.

44. Later that day, the plaintiff was moved to the Line 5 label machine; however, this was still in the same department with Williams and only a few feet away from him. This move afforded the plaintiff no protection from Williams.

45. On June 16, 2006, the plaintiff asked Hutchins if the move to Line 5 was permanent.

8

He told the plaintiff that he needed her on Line 5 right then and could not answer if the move was permanent.

46. The plaintiff then asked Ricky Smothers, the Supervisor over all Supervisors, if the move was permanent and he told the plaintiff she would have to talk to Tommy (LNU) in PR. Ricky was not fully aware of the incident that had occurred between the plaintiff and Williams or of her written statement complaining about the discriminatory and harassing treatment to which she was subjected.

47. The plaintiff was so upset that she had to clock out and go outside to calm down. Hutchins and Ricky followed her outside and told her to leave the property and come back in an hour to meet Tommy.

48. The plaintiff waited and spoke with Tommy and Marianne Boyer, CEO, about the situation with Williams and that she did not feel safe working with Williams and had started carrying a screwdriver in her back pocket for defense purposes. Despite the plaintiff's statement and statements from witnesses, they concluded that the plaintiff had somehow "baited" Williams and that no action was to be taken.

49. Boyer accused the plaintiff of having an issue with sexual discrimination, and that Williams would not be terminated. Recognizing that they were not going to resolve the discrimination and harassment by Frank, the plaintiff placed her badge on Tommy's desk.

50. It was later stated that if the plaintiff had returned to work following this incident, that the plaintiff would have been written up and disciplined.

51. Despite Plaintiff's repeated complaints of sexual harassment and discrimination, the

defendant took no disciplinary or remedial action against Williams and instead, allowed the discrimination and harassment to continue.

52. The next three scheduled work days, the plaintiff called in sick because she was too afraid to go in and face Williams. A female employee told the plaintiff that the first two days she was out, Williams asked her where the plaintiff was. On the third day, the plaintiff called Leah Allums in Personnel Resources and told her that she would not be returning because she did not feel she would be safe working with Williams.

53. As a result of the repeated acts of sexual harassment, discrimination and retaliation to which the plaintiff was subjected, she was constructively discharged by the defendant on June 21, 2006.

54. The plaintiff resigned as she could no longer physically and/or emotionally endure the discrimination, hostile work environment and repeated acts of retaliation. The plaintiff resigned under circumstances that would have caused a reasonable person to feel compelled to resign.

55. After the plaintiff was constructively discharged, Williams was written up for cursing at another female employee.

### COUNT I: TITLE VII VIOLATIONS
### SEXUAL DISCRIMINATION, SEXUAL DISCRIMINATION
### AND RETALIATION

56. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 above with the same force and effect as if fully set out in specific detail herein below.

57. Defendant discriminated against the Plaintiff on the basis of her sex with respect to

her promotions, wages, training, discipline, and other terms, conditions and privileges of her employment as set out above, leading up to and including her constructive discharge. Plaintiff was subjected to sexual harassment which was unwelcome and so severe or pervasive as to alter the terms and conditions of her employment. The Defendant knew, or should have known, of Williams' sexual discrimination and/or sexual harassment of the Plaintiff and/or his proclivity for sexually harassing female employees, and did not take prompt, effective, remedial action.

58.  The Defendant retaliated against the Plaintiff, as set out above, for her good faith actions of reporting, opposing, and/or refusing to participate in the sexually discriminating and harassing employment practices of the Defendant.

59.  The conduct of the Defendant was so severe or pervasive as to create a hostile working environment for the Plaintiff.

60.  All of the discrimination, harassment, and retaliation was done wilfully and with malicious and reckless disregard for the rights of the Plaintiff.

61.  Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay (plus interest), an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

62.  Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT II: INVASION OF PRIVACY

63.  Plaintiff re-alleges and incorporates by reference paragraphs 1 - 62 above with the

same force and effect as if fully set out in specific detail herein below.

64. This is a claim arising under the law of the State of Alabama to redress violations by Defendant Williams of the Plaintiff's right to privacy and Defendant Flavor House's ratification of that conduct.

65. The conduct of Defendant Williams, as set out above, was an invasion of Plaintiff's privacy and proximately caused Plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from the Defendants.

66. Defendant Flavor House condoned, authorized, and/or ratified Defendant Williams' conduct in that it knew or should have known of the continuing tortuous invasion of privacy of the Plaintiff and failed to stop Defendant Williams' conduct.

## COUNT III: OUTRAGE

67. Plaintiff re-alleges and incorporates by reference paragraphs 1 - 66 above with the same force and effect as if fully set out in specific detail hereinbelow.

68. This is a claim arising under the law of the State of Alabama to redress Defendant Williams' outrageous conduct towards the Plaintiff and Defendant Flavor House's ratification of that conduct.

69. The conduct of Defendant Williams, and other agents, officers, and servants of Defendant Flavor House, as set out above, was extreme, outrageous and beyond the boundaries of decency in civilized society, and it proximately caused Plaintiff to suffer great emotional distress for which she claims compensatory and punitive damages from the Defendants.

70. Defendant Flavor House condoned, authorized, and/or ratified Defendant

Williams' conduct, because they knew or should have known of Defendant Williams' outrageous conduct towards Plaintiff and failed to stop Defendant Williams' conduct.

## COUNT IV: NEGLIGENT AND/OR WANTON HIRING, SUPERVISION, TRAINING, AND RETENTION

71. The Plaintiff re-alleges and incorporates by reference paragraphs 1 - 70 above with the same force and effect as if fully set out in specific detail herein below.

72. This is a claim arising under the law of the State of Alabama to redress Defendant Flavor House's negligent and/or wanton hiring, supervision, training, and retention of Defendant Williams and other employees/agents of Flavor House.

73. Defendant Flavor House negligently, wantonly and/or inappropriately hired Defendant Williams and/or negligently, wantonly and/or inappropriately failed to adequately supervise, and train Defendant Williams and other employees/agents of Defendant Flavor House. Further, Defendant Flavor House negligently and/or wantonly retained Defendant Williams which proximately caused Defendant Williams' harassment of, discrimination of and retaliation against the Plaintiff.

74. Defendant Williams' harassment, discrimination, and retaliation of the Plaintiff caused her great emotional distress for which she seeks compensatory and punitive damages against the Defendants.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Grant Plaintiff a declaratory judgment holding that actions of Defendant, Flavor

House, described herein above violated and continue to violate the rights of the Plaintiff as secured by Title VII.

2.  Grant Plaintiff a permanent injunction enjoining Defendant Flavor House, it agents, successors, employees, attorneys and those action in concert with Defendant Flavor House and on Defendant Flavor House's behalf from continuing to violate Title VII.

3.  Grant the Plaintiff an Order requiring the Defendants to make the Plaintiff whole by awarding her the position she would have occupied in the absence of sexual harassment, sex discrimination and/or retaliation (or front pay), backpay (plus interest), compensatory, punitive, and/or nominal damages, and loss of benefits.

4.  The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted,

_____
**ANN C. ROBERTSON**
**TEMPLE D. TRUEBLOOD**
**Attorneys for the Plaintiff**

**OF COUNSEL:**
**WIGGINS, CHILDS, QUINN & PANTAZIS, L.L.C.**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

**BOBBIE S. CROOK (CRO-040)**
**Attorney for the Plaintiff**
367 South Saint Andrews Street

Dothan, AL 36301
(334) 671-8062

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.**

_____
OF COUNSEL

**PLAINTIFF REQUESTS THIS HONORABLE COURT TO SERVE VIA CERTIFIED MAIL UPON EACH OF THE NAMED DEFENDANTS THE FOLLOWING : SUMMONS, COMPLAINT.**

<u>Defendants' Addresses:</u>

Flavor House Products, Inc.
c/o Registered Agent
The Corporation Company
2000 Interstate Park Drive Ste 204
Montgomery, Alabama  36109


Franklin D. Williams, Jr.
1408 North Broad Street
Cowarts, Alabama 36321

_____
OF COUNSEL