**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LINDA THORNTON,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: |
| | * | 1:07 cv-712-WKW |
| **FLAVOR HOUSE PRODUCTS, INC., and** | * | |
| **FRANKLIN D. WILLIAMS, JR.,** | * | |
| | * | |
| Defendants. | * | **JURY DEMAND** |

**PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES
OF DEFENDANT, FLAVOR HOUSE PRODUCTS, INC.**

COMES NOW the Plaintiff, Linda Thornton, and respectfully moves this Honorable Court to strike the affirmative defenses of Defendant, Flavor House Products, Inc., in the above styled cause due to spoilation of evidence by the Defendant. In support whereof, the Plaintiff submits the following:

1.   On or about September 18, 2006, Plaintiff timely filed a charge of employment discrimination with the Equal Employment Opportunities Commission, the "EEOC", (Charge # 420-2006-05107), in which she complained that the Defendants subjected her to sexual discrimination, sexual harassment, and retaliation in relation to the terms, conditions and benefits of her employment. [Ex. A].

2.   The Notice of Charge was mailed by the EEOC to Flavor House on September 26, 2006. [Ex. B].

3.   Human Resources Director, Tommy Nance, received a copy of the plaintiff's EEOC Charge and forwarded it to corporate counsel. [Ex. C, pp. 52-53 and Exhibit 3]. At this time, while Nance was employed with Flavor House, all of his investigative notes were located in his desk. [Ex.

C, pp. 54-55].

4. As of October 16, 2006, Flavor House's legal counsel had received the plaintiff's EEOC Charge and was put on notice of the plaintiff's claims. [Ex. D].

5. Nance was involuntarily terminated by Flavor House on December 4, 2006. [Ex. C].

6. On August 6, 2007, the plaintiff filed her Complaint in this action, asserting claims against defendant, Flavor House, Inc. ("Flavor House"), of sexual harassment, sex discrimination and retaliation under Title VII; invasion of privacy; outrage; and negligent and/or wanton hiring, supervision, training and retention. [Doc. 1, Counts I - IV].

7. With regard to her Title VII claims against Flavor House, the plaintiff specifically alleged that she repeatedly complained of the sexual harassment and sex discrimination to members of management including MaryAnn Boyer, Melvin Hutchins, and Chris Jordan, and also to Tommy Nance of Human Resources; but no corrective action was taken and the sexual harassment and discrimination continued. [Doc. 1, ¶¶ 13, 20-22, 24, 27, 30, 37-40, 43, 48-50, 57).

8. With regard to her state law claims of invasion of privacy and outrage against Flavor House, the plaintiff specifically alleged that the defendant condoned, authorized or ratified the conduct of Franklin Williams and that it knew or should have known of William's tortious conduct against her and failed to stop the conduct. [Doc. 1, Counts II-III].

9. With regard to her state law claim of negligent and/or wanton hiring, supervision, training and retention against defendant Flavor House, the plaintiff specifically alleged that the defendant negligently and/or wantonly hired, supervised, trained and/or retained Franklin Williams and other employees. [Doc. 1, Count IV].

10. On August 28, 2007, defendant Flavor House submitted an Answer to the Complaint, in which the defendant asserted the following relevant affirmative defenses to plaintiff's claims:

- While defendant expressly denies that it or any employee under its supervision acted in any manner which would constitute a violation of plaintiff's rights, if plaintiff's rights were violated, such violation occurred outside the scope of such persons' employment and with out the consent of defendant. Defendant neither knew nor had reason to know of any such circumstance. Defendant did not condone, ratify, or tolerate any such conduct but instead prohibited such conduct [Doc. 5, Tenth Defense];

- To the extent that plaintiff failed to give timely notice to defendant that she believed she suffered the alleged conduct, a reasonable opportunity to investigate and/or remedy the alleged conduct, Plaintiff's claims are barred by the doctrines of unclean hands and laches [Doc 5, Eleventh Defense];

- To the extent that plaintiff failed to follow defendant's published policies and procedures prohibiting harassment, plaintiff's claims are barred by the doctrines of estoppel and waiver [Doc. 5, Twelfth Defense];

- Plaintiff's claims are barred to the extent that defendants exercised reasonable care to prevent and correct promptly any harassing behavior and plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by defendant or to avoid harm otherwise [Doc. 5, Seventeenth Defense]; and

- Defendant may not be held vicariously liable for punitive damages under Title VII based on unlawful employment actions made by its agents, if any are proven, because any such unlawful actions were contrary to defendant's policies and good faith efforts to comply with Title VII [Doc. 5, Twenty-Eighth Defense].

11. While conducting discovery in this matter, it was found that the defendant had failed to maintain or had otherwise despoiled evidence which is clearly and directly relevant to factual matters which have direct bearing on the affirmative defenses set out above. Specifically, the defendant has despoiled evidence of the plaintiff's complaints of sexual harassment and/or sex discrimination; evidence of what, if any, investigation was conducted in response to these complaints; evidence of what, if any, determinations were made as a result of the investigation; and

evidence of what, if any, remedial and/or corrective action was taken by the defendant in response to these complaints.

      12.    Plaintiff submitted Requests for Production to Flavor House seeking, in pertinent part, the following items:

> 16.    Please produce any and all documents relating to any reports of sexual harassment, sexual discrimination or retaliation made against employees of defendant since January 1, 2000, including verbal and written complaints and/or EEOC charges; or to any investigation into such complaints, including but not limited to any notes, correspondence, tapes, transcripts, or other documents relating to any interviews conducted in response to the allegations; or relating to the result of the investigation, whether or not the complaints were investigated or not investigated and regardless of the findings of same, including lawsuits that have been filed against the defendant alleging racial harassment and/or race discrimination.

[Ex. F, Request No. 16].

      13.    As set out in detail below, during Nance's deposition it was discovered that: (1) he had no independent recollection of any components of the investigations he allegedly conducted in response to the plaintiff's complaints; (2) that he would have to rely on the investigative notes he allegedly made at the time of the plaintiff's complaints in order to recall any aspects of the investigation; and (3) these investigative notes are purportedly "missing," and to date have not been produced by the defendant.

      14.    Specifically, Nance testified that in order to conduct an investigation of a complaint, the company would collect statements from persons involved or with knowledge of the complaint and then they would investigate by taking these statements and interviewing the individuals. [Ex. C, pp. 32-34]. Nance made notes of the interviews with the individuals and these investigative notes are separate from initial written statements of employees. [Ex. C, pp. 34 and 43]. These notes were filed in his desk drawer and organized either by person, date or incident name. {Ex. C, pp. 36-37].

4

15.     Per Nance, the purpose of these interviews was to "reiterate and bring out anything that's in addition to the statements to help make a decision as to what occurred relative to the statements." [Ex. C, pp. 56-57]. And it was what Nance learned during the "investigative process," that, "would have determined the outcome of the investigation." [Ex. C, p.60]. He does not rely on his memory of specific investigations, as he "take[s] notes based on investigations, and [he] make[s] determinations based off of those notes." [Ex. C, pp. 106-107].

16.     With regard to the defendant's actions allegedly taken in response to the plaintiff's specific complaints of harassment made against defendant Franklin Williams, Jr., Nance's deposition testimony repeatedly evidences that without his investigative notes, Nance has no memories of having a conversation with Williams about the plaintiff's accusations, of the individual conversations he had during the investigation, or of who he spoke to during the investigation:

> Q. Okay. So you don't have any independent knowledge of talking to Frank Williams about Plaintiff's Exhibit Number 2?
> A. I'm sure I investigated and talked with individuals. I don't recall the specific conversation, no.
> Q. And would that conversation or notes concerning your conversation be included in your notes surrounding the investigation of Ms. Thornton's allegations?
> A. All the notes for the 6/14 incident would have been included in my notes in the desk.
> Q. So–so your notes concerning what Mr. Williams did or didn't say when you interviewed him would be in those notes?
> A. Yes.
> [Ex. C, pp. 55-56]
> \* \* \*
> Q. Do you recall whether you learned anything new from Mr. Williams?
> A. I don't recall from memory, no.
> [Ex. C, p. 57]
> \* \* \*
> Q. Do you remember whether he admitted to you that he did curse her?
> A. I don't recall if he admitted that or not from memory, no. I don't recall that.
> Q. Do you remember if he denied–
> A. I don't recall, no.

[Ex. C, p. 57; and see also p. 86]

\* \* \*

Q. All right. Do you recall what Mr. Williams said about whether or not he was throwing cans during the incident that Ms. Thornton describes in that Exhibit?
A. I don't recall other than Frank's statement. From memory, no.
Q. And do you recall whether you asked any other witnesses whether or not they saw–could see whether or not he was throwing cans?
A. Not from memory. Again, my notes had, you know, the investigation of what occurred. I don't recall if anyone else said there was cans being thrown or there was anything going on. I don't recall that, no.
[Ex. C, p. 67]

\* \* \*

Q. Do you remember having an interview with Katherine Long?
A. I don't recall the interview, no, investigation. Not from memory.
Q. Now in her statement she – she says she heard Frank using the F word and – I'm not looking at the document. I think she said something about not being able to do every damn thing; is that right?
A. That is her statement, yes.
Q. And then it said except he was doing a lot of yelling, etcetera, etcetera, etcetera, etcetera. Do – do you – did you ask her to expound on that etcetera, etcetera, etcetera when you had an interview with her?
A. I probably would have. I don't recall what that would have been without my notes. From memory, I don't recall that.
[Ex. C, pp. 67-68].

\* \* \*

Q. Plaintiff's Exhibit Number 6 is the Tamekia Cook statement. Do you remember interviewing Tamekia Cook?
A. Not from memory, no.
Q. Do you think you took notes on that?
A. I'm sure I would have, yes.
[Ex. C, pp. 68-69]

\* \* \*

Q. Did you do any -- did you talk to anybody else in that investigation other than the people I've – the – witnesses I've put in front of you?
A. I wouldn't recall from memory who I talked with.
[Ex. C, p. 70].

\* \* \*

A. The other employees did not state the cursing was directed towards Linda.
Q. They weren't asked, were they?
Ms. SWAIN: Objection.
A. I don't recall one way or the other.
[Ex. C, pp. 84-85].

\* \* \*

6

> Q. Do you recall if you followed up with Linda Thornton to find out what the issues that she discussed with Melvin Hutchins were?
> A. During the investigation, I'm sure I asked anything relevant to the statement.
> Q. And do you have any independent memory of that?
> A. Again, I would have had notes on that. I don't recall from memory.
> [Ex. C, p. 106].

[See also, Ex. C, pp. 112-117 (reflecting Nance's inability, absent his notes, to recall discussion with Williams regarding his convictions for sex-related offenses).

17. Nor does Nance have any independent memory of the substance of the plaintiff's complaints to him, without the aid of his missing notes:

> Q. Do you have any independent memory of having a conversation with Linda Thornton about the issues she's referring to that she discussed with Melvin Hutchins about Frank Williams?
> A. I recall having multiple conversations with Linda Thronton throughout the course of her employment with Flavor House in regards to multiple issues.
> Q. Uh-huh.
> A. Now, to tell you specifically what memory related to what issue, I can't rely on my memory for that, no. That's why I have notes.
> Q. Okay. And where are those notes, sir?
> A. Again, I've already answered that question. My notes were in my desk drawer when I left Flavor House.
> [Ex. C, pp. 107-108].
> \* \* \*
> Q. She was complaining that Frank was making threats about what he was going to do to her; right?
> MS. SWAIN: Objection.
> A. I don't – I don't know what those allegations were, what her –
> Q. You don't remember –
> A. – comments where.
> Q. –any–any of– did you have a conversation with her?
> A. I investigate every statement that comes in, every documentation form, yes.
> Q. My question is, did you have a conversation with her after you received Plaintiffs 13 about what kind of threats were being made?
> A. I don't recall specific conversations I've had about the investigation.
> Q. I didn't ask you about the specifics. I asked did you have a conversation.
> A. We probably did. If a statement was turned in, then there was a follow-up investigation.
> Q. But you don't remember anything about it?

> A. That's why I have notes.
> Q. Which we don't have; is that right?
> A. (No response.)
> Q. You don't remember any – you need to answer out loud for the court reporter.
> A. There was no answer. The notes aren't here.
> [Ex. C, pp. 143-144].
>
> * * *
>
> Q. Okay. Do you remember what she said the threats were?
> A. Not from memory, no.
> Q. Do you remember that he was going around saying he was going to fuck her up if she – if he lost his job by her saying that he was a child molester?
> MS. SWAIN: Objection
> A. I don't recall those specific – it's not in the statements.
> Q. You have no recollection of – of her complaining about that?
> A. No, I do not.
> [Ex. C, p. 145].

18.     Without looking at his notes, Nance cannot recall if he ever even received a complaint of sexual harassment while at Flavor House. [Ex. C, p. 35].

19.     As of the time of his deposition, Nance no longer had his notes and did not know what happened to his investigative notes from when he had interviewed people that has given written statements. [Ex. C, pp. 42, 58].

20.     When Nance received the plaintiff's EEOC Charge in 2006 all of his investigative notes were filed in his desk. [Ex. C, pp. 52-55]. Nance has testified that he did not turn over these notes to anyone when he left the employment of Flavor House, **"unless requested by corporate counsel. Any documentation we had was sent to them."** [Ex. C, p. 108](emphasis added).

21.     Despite the plaintiff's specific Request for Production to the defendant requesting such investigation notes and materials, to date the notes allegedly made by Nance in response to the plaintiff's complaints have not been produced or made available by the defendant and it is the plaintiff's understanding that these materials are simply nowhere to be found. No further explanation

has been given.

22. As of September 2006, Nance as the Human Resources Director was put on notice of the plaintiff's pending EEOC claims against FlavorHouse. As of October 16, 2006, Flavor House's legal counsel was put on notice of the plaintiff's pending EEOC claims against FlavorHouse. Nance's employment with Flavor House was not terminated until December 4, 2006. The defendant was placed on notice of plaintiff's claims well before Nance's termination and thus had an obligation to preserve and maintain all relevant documentation and evidence related to same. See Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 176 (Ala.2000)(spoliation is an attempt by a party to suppress or destroy material evidence favorable to the party's adversary), quoting May v. Moore, 424 So.2d 596, 603 (Ala.1982).

23. While Nance was employed by Flavor House, his investigative notes were still maintained and filed in his desk. Nance has testified he did not take these notes with him, and did not turn them over to anyone, "unless requested by corporate counsel." Nance was the individual who allegedly took some of the plaintiff's complaints of sexual harassment and discrimination, who allegedly took responsive action and investigated these complaints, and who allegedly made determinations about the plaintiff's complaints based upon his investigation. Yet, he has no independent recollection of any of these matters and his investigation notes, upon which he needs to rely, are nowhere to be found.

24. While federal law governs the imposition of spoliation sanctions as an evidentiary matter, the federal law in the Eleventh Circuit does not set forth specific guidelines and this Circuit takes direction from applicable state law factors. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). In Alabama, the courts analyze spoliation issues in terms of four factors: the

importance of the evidence destroyed; the culpability of the offending parties; fundamental fairness; and alternative sources of information. Vesta Fire Ins. Corp. v. Milam & Co. Const., Inc., 901 So.2d 84, 94-95 (Ala. 2004).

25.     As to the first factor, the importance of the evidence destroyed or otherwise lost is paramount to the defendant's affirmative defenses, the plaintiff's ability to rebut same, and to plaintiff's claims for punitive damages. How is the plaintiff to prove the defendant failed to take effective remedial measures if she cannot obtain discovery as to what those investigative measures actually were? Nor can the defendant assert that the plaintiff failed to take advantage of their policies or to mitigate the circumstances if there is no evidence of her complaints and their substance. The defendant is also attempting to prove that it did not condone or otherwise ratify defendant William's conduct, yet cannot produce evidence as to whether or not they investigated the complaints against him, whether Williams may have admitted to the conduct alleged, or what other evidence may have been unearthed during the alleged investigation. All of these matters are paramount to plaintiff's claims and the affirmative defenses asserted in response thereto.

26.     The culpability of the defendant is also a factor to weigh in this matter. The defendant, and it's legal counsel, knew of the plaintiff's pending EEOC charges as early as September 2006 and either one of two things occurred: (1) the defendant took no steps whatsoever to preserve the investigative notes and files of the Human Resources Director regarding the plaintiff's complaints and destroyed them; or (2) Nance provided the investigative notes and files to corporate counsel at their request and the documents have since disappeared with no explanation given. Culpability exists in both scenarios.

27.     When viewed from the plaintiff's perspective, the fundamental fairness of this matter is specifically askew. The plaintiff repeatedly complained to her employer in an attempt to stop the sexual harassment and discrimination to which she was subjected. The plaintiff alleges the defendant did nothing to stop the sexual harassment and discrimination and instead retaliated against her. Now, as the plaintiff seeks recourse in the court system, the very evidence of her complaints and attempts to resolve this matter absent legal action is simply gone. The plaintiff has no way to reproduce or otherwise locate such items and is faced with the claim that the defendant's institutional memory regarding her complaints has simply been wiped clean, with no explanation from the defendant as to why this occurred.

28.     And lastly, the plaintiff has no alternative means by which she may acquire the "lost" information as the only individual involved in investigation her complaints, interviewing witnesses, compiling investigative notes, and making determinations from those notes now has no independent recollection of the matter, as evidenced by Nance's deposition testimony. There simply is no alternative means by which the plaintiff can discover the substance of Nance's alleged investigation and upon what his determinations were based.

29.     Based on the foregoing, the plaintiff now seeks sanctions against Flavor House, including the striking of the defendant's affirmative defenses as set out above. Nance's inability to independently recall information regarding the plaintiff's complaints and his investigations regarding same coupled with his inability to account for his missing notes serves as sufficient basis for spoilation sanctions. Additionally, the defendant FlavorHouse has provided no explanation for the disappearance of Nance's investigative files regarding the plaintiff. See Continental Cas. Co. v. Compass Bank, 2006 WL 533510, 1-2 (S.D.Ala. 2006). The defendant's actions have served only

to thwart the plaintiff's efforts to uncover the truth regarding Flavor House's handling of and response to the plaintiff's complaints of sexual harassment and discrimination such that the plaintiff is placed at a disadvantage in properly responding to the defendant's inevitable summary judgment motion and to otherwise prepare for trial. Additionally, Nance's utter lack of memory and the unexplained erasure of the defendant's institutional memory place the plaintiff in a position where she is denied her Constitutionally protected due process rights as she is unable to effectively cross examine Nance, or a corporate representative, on such matters or to elicit evidence essential to a credibility determination.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff respectfully moves this Honorable Court to order sanctions by striking the affirmative defenses of the defendant Flavor House, as set out herein, for both the purposes of summary judgment and trial.

Respectfully submitted,

s/ Temple D. Trueblood
Ann C. Robertson (ROB016)
(TRU014)
Attorneys for Plaintiff

OF COUNSEL:
WIGGINS, CHILDS, QUINN & PANTAIZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

CO-COUNSEL:
Bobbie S. Crook, Esq.
367 South St. Andrews Street
Dothan, Alabama 36301
(334) 671-8062

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 23rd day of July, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jennifer F. Swain
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1600 Wachovia Tower
420 North Twentieth Street
Birmingham, Alabama 35203
(205) 328-0480

Steadman S. Shealy, Jr.
Richard E. Crum
M. Russ Goodman
Shealy, Crum & Pike, P.A.
P.O. Box 6346
Dothan, AL 36302-6346
(334) 677-3000

                                          s/ Temple D. Trueblood
                                          OF COUNSEL